WILLIAM S. HUNGERFORD, Respondent,

*vs.*

CALEB CUSHING, ISAAC T. GREEN, CALEB LORING, Administrator of Robert Rantoul, Jr., ROBERT S. and CHARLES W. RANTOUL, CHARLES DEXTER, WILLARD A. HARRINGTON, JAMES A., CHARLES, ADELAIDE and EMILY PURINTON, CLARA WOODWARD and her husband, and ELIZABETH McPHAIL, and her husband, Appellants.

APPEAL FROM CIRCUIT COURT, DANE COUNTY.

H. claiming the whole of certain property, joined with G. and P. in the execution of a trust deed to C. providing that they were each to have such interest in a stock company as they each had rights in the property. The making of this deed did not show that a partnership existed between H., G. and P. in relation to the property.

A bill which, referring to a deed, makes it a part, stated the provisions of the deed in general terms, while the deed was very specific and explicit in its statements. The bill is not for that cause demurrable.

A bill in equity against several defendants should not contain distinct and independent matters against the several defendants, although each distinct matter may constitute a good cause of action against the person to whom the matter relates; nor should such matter be contained in a bill against a sole defendant.

A bill in equity which averred that H. was the sole owner of property, which was conveyed to C. by H., G. & P., in trust, to convey to each grantor such proportion of stock reckoned at $35,000, as each should be entitled to, either by agreement or by decision of arbitrators; and also averred that the arbitrators had assigned the whole to H. Such a bill was not multifarious because it prayed: 1st. That the award of the arbitrators might be confirmed by the court; 2d. That the trustee might render an account of the rents and profits of the property; and, 3d. That the court might annul the trust deed, and compel a re-conveyance of the property. These prayers are all consistent with each other.

A plaintiff to an equity suit is only required to state the interests of such

Hungerford vs. Cushing et al.

defendants as his knowledge extends to, and as to others, it is sufficient to say he cannot state what their interest is.

Where a trust deed provided that unless sixty-five shares in a company to be formed should be subscribed before the end of six months, the trustee would re-convey the trust property; and a bill, filed to compel the re-conveyance, averred that the shares were not subscribed; it need not also aver a demand to reconvey.

Where a trust deed provided that upon the re-conveyance of the trust property, the grantees should pay all expenditures made by the trustee, and the bill to compel a re-conveyance denies that any sum is due to the trustee, it need not also aver an offer to pay for expenditures.

New parties may be brought before the court by an amendment to the original bill as well as by the supplemental bill.

The representatives of a person not a party to a suit at the time of his death may be brought before the court by amendment to the bill in the same manner as their ancestors could be.

This cause was first commenced in 1848, in the county of Iowa, and thence changed to the county of Green by the complainant. While there the order of July, 1849, restoring Cushing to the possession on condition of his giving bond, &c., was made. Afterwards the cause was removed to Dane county, where it was brought to trial in 1851; and an order entered granting the prayer of the bill, and also putting the complainant into possession of the property, &c. The defendant Cushing took an appeal from the decree of the circuit court to the supreme court, and the decree was reversed on the 29th of December, 1852. The complainant then amended his bill by adding as parties the heirs of James Purinton, and of Robert Rantoul, Jr., who had died since the commencement of the suit. The heirs of Purinton being brought in by process, demurred to the bill, which was over-ruled by the the circuit judge; and on that decision this appeal was taken to the supreme court. The opinion of the court has sufficiently stated the averrments of the bill, and also the points of the demurrer, and they will be omitted here. The only paper that will be here referred to is the order of the

supreme court of the 29th December, 1852. No opinion was written by the court at that time, and the order is entered in the journal of the court of that day; as follows:

" This cause came on to be heard in the supreme court of this state, at the December term thereof, in the year of our Lord one thousand eight hundred and fifty-two, upon the appeal taken therein, and was argued by counsel as well on the part of the complainant as of the said defendants; and the court now here being fully advised of and concerning the premises and of the errors in said decree alleged, and mature deliberation being thereupon had. It is by the said court now here considered, ordered, adjudged and decreed, that the decree of the circuit court of the county of Dane, in said state, ' in equity,' be and the same is hereby reversed for want of proper parties in the said cause; and this court doth further order that this cause be remanded to the circuit court of Dane county aforesaid to be therein on the equity side thereof further proceeded in as in law and equity is proper, with leave hereby granted to the said complainant to file in said cause an amended bill making thereto proper and necessary parties; and that the said defendant recover his proper costs to be taxed. It is also recommended that the complainant remain in possession of the property by him now possessed and described in his bill of complaint, until the said circuit court shall otherwise order upon good cause to the said court shown that the said complainant ought no longer to retain such possession."

Mr. Justice SMITH sat *pro forma* merely, as in the other appeals in this case.

*H. S. Orton and E. G. Ryan*, for the appellants,

*Knowlton, Knapp & Frink*, for the respondent.

*By the Court*, WHITON, C. J.  The bill of complaint in this case alleges that the complainant was the sole owner of the equitable title to the real estate which is one of the subjects of controversy in this suit, but that Isaac T. Greene one of the defendants, and James Purinton, whose rights real or pretended, are represented by the appellants, claimed to own a share or interest in the property.  That this equitable title of the complainant was subject to the title of the United States; but that by virtue of the pre-emption laws of the United States, and the possession of the complainant he could obtain a perfect legal title by paying the minimum price of said land.  That to settle the conflicting claims of the complainant and the said Greene and Purinton, an agreement was entered into by which the said claims were submitted to arbitrators who were to decide in relation to them.

That while the complainant and Greene and Purinton were thus situated in regard to the property, the defendant Cushing, representing himself to be the agent of a company of eastern capitalists, proposed to purchase an interest in said mills and property, and to put the whole into a joint stock company; the stock to be rated at one hundred thousand dollars, and to be divided into one hundred shares of one thousand dollars each.  The said Cushing and those whom he represented to take sixty-five thousand dollars; and the said Cushing to devote his whole time and attention to the business, until the objects of the company should be fully carried out.

That the complainants Greene and Purinton on the first day of October, A. D. 1846, executed a joint deed of the property to the said Cushing, conveying to him all their rights interests and titles in and to the said property; that the said Cushing was then and there put into quiet and full possession of the property, and has remained in the possession ever since.  That the conveyance of the complainants

Greene and Purinton was in trust, and that the trusts specified in the deed were in substance as above recited. The deed above mentioned is appended to the bill and made a part of it. The bill charges that the defendant Cushing has not fulfilled any of the trusts declared in the deed, but has wholly neglected to perform his duty as trustee.

The bill also alleges that, in pursuance of the agreement of the complainant, Greene and Purinton, to submit their differences in relation to the property to the determination of arbitrators, an award was made by the arbitrators agreed upon, by which the whole property was awarded to the complainant, without prejudice to the rights of Greene as a mortgagee of the property to the amount of four thousand and eighteen dollars and thirty-four cents. The bill prays that the court will by decree confirm the award made by the arbitrators, or for such other or further decree in that behalf as shall be meet and proper; and that by a further decree the defendant Cushing and all others holding by or under him in his trust capacity may render an account of the profits of the mill and premises while in the possession of Cushing or in any one under him; and that the profits may be decreed to the complainant, and also that Cushing may be compelled to pay the same, and to account to the complainant for such sums as might with reasonable care, diligence and prudence have been realized from the use and possession of the mills and premises; and that by a final decree the deed of trust to Cushing may be annulled, and Cushing, and all claiming under him may be compelled to re-deed and re-deliver the premises to the complainant and account for all the personal property received by Cushing at the time he received possession of the mills and premises; and for further or other relief.

Upon looking at the trust deed which is made a part of the bill, it appears to be a conveyance of the property mentioned

Hungerford vs. Cushing et al.

in the body of the bill in trust to Cushing. That upon the basis of the property conveyed to him, a company should be formed which should consist of one hundred shares of the rated value of one thousand dollars each, for the purpose of conducting, managing and improving the property to the best advantage for the benefit of the company on the terms and conditions expressed in the deed. Among these conditions is the following: " That in the account of the capital stock of said company, the property herein shall be taken and declared to be a subscription of thirty-five shares, to be distributed between said Hungerford, Greene and Purinton, in such proportion as they may agree on ; if they cannot agree, then in such proportion as may be decided by arbitrators, in the manner prescribed by a certain agreement already entered into by said parties." The above is a statement of such parts of the bill as are drawn in question by the demurrer.

The first cause of demurrer is " that the bill discloses a partnership between the complainant, and the defendants Greene & Purinton in the ownership and use of personal property, and does not seek the relief appropriate to such a case."

I do not see as the bill discloses the alleged partnership. It is not alleged in terms in the bill, nor are the facts as there stated, such as to show the existence of that relation. The interest of the complainant in the property is hostile to that of Greene & Purinton. He claims to own the whole property, and although he joins them in executing the trust deed, their interest in the company which was to be formed, was to be in proportion to their interest in the property as it should be ascertained by arbitrators, in case they did not agree themselves. Even admitting that by joining with Greene and Purinton in executing the trust deed, the complainant is estopped to deny that they had an interest in the property, still, I do not see any evidence of a partnership ; at most, they were only tenants in common in the property.

Vol. VIII.          22

There is no evidence furnished by the bill, that they used this property in carrying on business for their common benefit, showing the profits and losses.

The next cause of demurrer is, " that the allegations of complainants' bill, as to the import and effect of the trustee deed to Cushing, are denied and contradicted by the deed itself, which is made an exhibit to said bill marked "N."

I do not think that this cause of demurrer is sustained by a comparison of the trust deed with the statements contained in the bill. The statements of the bill are general, while the provisions of the deed are in some respects quite specific and particular. The deed contains many matters not stated in the bill, but they do not contradict the statements of the bill but appear to be consistent with it.

The next cause of demurrer is that " the complainant's bill is multifarious in this, to wit: 1st. The court is prayed to confirm the award of the arbitrators, Lockwood, Marshall and Taylor, (which said award is made an exhibit in the bill marked "S.,") and which award makes the complainant the sole owner of the property: 2d. The court is prayed to compel Caleb Cushing, the trustee, and all the *cestui que trusts*, and beneficiaries under the trust deed, to account to the complainant alone, according to the trust deed thus affirming and establishing the trust deed: 3d. The court is prayed to annul by final decree the trust deed, and for re-conveyance of the property by the trustee, and the beneficiaries under the deed. And these several and contradictory modes of relief are all pertinent to the charging part of the bill."

This cause of demurer merits careful attention. A bill of complaint should not contain distinct and independent matters against several defendants, although each distinct matter may constitute a good cause of action against the person to whom the matter relates: nor should such matters be contained in a bill filed against a sole defendant. Story's Eq. Pl. §§ 271,

286, 530. I do not think that the prayer of the bill is open to the objections, which are made in the demurrer.

The first special prayer for relief contained in this bill is that the court would confirm the award of the arbitrators named, or for such other or further decree in that behalf as shall be proper. This prayer for relief is in accordance with the case made by the bill. The bill alleges that the complainant was the sole owner of the property, but that Purinton and Greene claimed a portion of it, and that to settle those conflicting claims, the complainants, Purinton and Greene agreed to submit their claims to arbitrators, and that the arbitrators awarded the whole property to the complainant. It is to be observed that the defendant Cushing agreed in the trust deed, that the shares in the company to be formed should be distributed between the complainant Greene and Purinton, in such proportion as should be decided by the arbitrators, in case they did not agree among themselves. It was therefore proper for the complainant to pray for a confirmation of the award, after alleging in the bill that the arbitrators had awarded the whole property to him; thus showing that he was entitled to the whole property.

The next special prayer for relief is, that Cushing and all who hold by or through him in his capacity as trustee, may render an account of the profits of the mill and premises while in the possession of Cushing or his agents. It is claimed in the demurrer that this prayer for relief affirms and establishes the trust deed. I do not see how this prayer for relief can properly be said to affirm and establish the trust deed. The bill alleges that the complainant was the sole owner of the property, that the property was conveyed to Cushing in trust for certain purposes, that the possession of the property was delivered to him, and that he has violated the trust in all respects. If these facts are true, the complainant is entitled to an account of the profits realized by Cushing while

the property was in his possession, by the law governing courts of chancery in cases of this description. To pray that a trustee may render an account of the profits realized by him from the use of the trust property, is not to affirm or establish the deed which created the trust, and appointed him the trustee, were it. so, no trustee however faithless, could be called upon to account 'without affirming the deed which appointed him; it would be impossible in the same suit to procure the removal of the trustee, the restoration of the property to its rightful owner, and an account of the profits realized by the trustee from the use of the trust property; but separate suits must be brought to accomplish these purposes. The statement of this proposition is its refutation.

It is further objected in the demurrer to the prayer for relief, that the "court is prayed to annul by final decree the trust deed, and for a reconveyance of the property by the trustee and the beneficiaries under the trust deed." I see no objection to this prayer for relief. If, as is charged in the bill, the trustee has wholly neglected and refused to fulfil the trust, it is proper that the trust property should be restored to its owner, and according to the statements of the bill, the complainant is entitled to it. It is proper also, that the deed which created the trust and appointed the trustee should be vacated and annulled.

Nor do I discover that these several prayers for special relief are contradictory. They are all consistent with each other, and with the statements contained in the bill. We have seen that the prayer for an account from the trustee, and from all who have held the trust property under him, is consistent with the prayer to have the trust deed annulled; and the demurrer points out no other contradiction in the prayer of the bill.

The next cause of demurrer is, that "the interest of the complainant and the several defendants is not clearly set forth

in the bill. The general claim of the complainant of the sole ownership of the property is contradicted by his joining with the defendants, Greene and Purinton, in the execution of the trust deed to the defendant Cushing. The several interests of the defendants Greene and Purinton are uncertain and unascertained by said bill."

The interest of the complainant in the property, is, I think, sufficiently set forth, and also that of the defendant Cushing. The facts and circumstances which gave him his interest in the property and also the possession of it, are set out with particularity, and also the facts which constitute the claim of Purinton and Greene. This is also the case with Rantoul, Dexter and Harrington. The former of whom is stated to have purchased, or procured to be assigned to him by Greene and Purinton, all their claim and interest in the property, and to have been acting trustee under Cushing; and the latter to claim some interest in the property by virtue of some purchase of or subscription to the capital stock of the company claimed to be formed by Cushing; but what that interest is, the complainant avers he cannot say. This is a definite statement of the interest of all the defendants, except Dexter and Harrington, and the complainant cannot be compelled to state that with more particularity than he has done. He stated that " they claim some interest in the property by virtue of some purchase of or subscription to the capital stock of the company formed by Cushing," but he expressly says that " he cannot say what that interest is." I do not see that he can be called upon to state more.

The next cause of demurrer is that " the bill does not allege any sufficient demand upon the defendant Cushing for a reconveyance of the property."

Without deciding whether these demurrants have any right to raise this objection to the bill, it is sufficient to observe that if all the allegations of the bill are true and Cushing has vi-

olated his duty as trustee as therein alleged, no demand upon him for a reconveyance of the property was necessary. The trust deed provides that unless sixty-five shares in the company shall be subscribed on or before the expiration of six months, the trustee should on the demand of the complainant, Greene and Purinton, or a majority of them in interest, and on the reimbursement and discharge of all his advances and engagements in the premises, reconvey all the property to the complainant, Greene and Purinton, or their assigns. It is evident that this agreement was no provision for a violation of duty by the trustee, such as is charged in the bill. It appears to be a provision for the contingency of the inability of the trustee to form the company in the manner pointed out in the deed after all proper exertions to accomplish that object had been made by him; but by no means indicates the course to be pursued by the complainant in the case of a total abandonment of duty by the trustee. If the trustee performed his duty in good faith, and in the discharge of it had expended money or had engaged to pay money and was unable to form the company in the manner proposed, then upon demand, and the reimbursement of his advances, and the discharge of his engagements, he was to reconvey the property. But the parties to the deed could not have contemplated that the trustee would totally abandon his duty in the manner charged in the bill. If this had been foreseen, it is quite probable that the trust deed would not have been executed.

The next cause of demurrer, is " that the bill does not show that the complainant has ever offered to pay to the defendant Cushing, or to the beneficiaries under the trust, what they or either of them have expended under said trust deed, nor does the complainant any where in his bill offer to do equity to any of the defendants."

It is quite doubtful whether these demurrants can set up by

way of demurrer, the non-payment to Cushing of his advances as trustee, but, I do not think this objection well taken for another reason. The bill does not admit that any sum whatever is due to either of the defendants, but on the contrary, claims that the complainant is entitled to the relief which he seeks without the payment of any sum whatever. This being the aspect of the bill in this respect, it cannot of course be necessary to offer to pay any thing to the defendants.

The next cause of demurrer is, that " the bill does not pray for a re-conveyance to complainant, Greene and Purington, by the defendant, Cushing, as provided in a certain contingency, mentioned in the trust deed; but prays a re-conveyance to the complainant."

I have before stated this was a proper prayer for relief, and that it is so, is apparent from the following considerations : It is provided in the trust deed that the stock in the company which was to be formed, which represented this property was to be distributed to the complainant, Greene and Purinton, in such proportion as " should be decided by arbitrators in the manner prescribed by a certain agreement already entered into by said parties." And it is further provided in the trust deed, that the " trustee shall on demand, in writing of said Hungerford, Greene and Purinton, or a majority of them in interest," and on the reimbursement of his advances, &c., reconvey all the property to them unless the sixty-five shares in the company contemplated in the trust deed, should be subscribed within six months. But in what proportion was this to be conveyed ? What was each to have ? Was it to be conveyed to them so as to vest in each an equal interest, or was it to be conveyed as the stock was to be distributed in case the company was formed ? I think that this agreement was that Cushing should convey the property so as to carry into effect the. decision of the arbitrators mentioned in the trust deed; in case the company was not formed within the

time fixed in the deed, upon being repaid his advances. At least I think, that as all the parties to the trust deed are now before the court, or their representatives; and as the bill alleges that the arbitrators did award all the property to the complainant, it is proper to pray for a confirmation of the award and for a conveyance of the property in accordance with it.

The next course of demurrer is that " these defendants cannot be brought before the court and compelled to answer the bill by an amendment of the bill. The complainant should have filed a supplemental bill."

It is quite usual to bring new parties before the court by supplemental bill, but it may also be done in many cases by an amendment of the original bill. Daniel's Ch., Pr. 1658. *Ensworth vs. Lambert, et al.* 4 J. Ch. R. 605. But in this case express leave was given to the complainant by the Supreme Court to amend the bill by adding new parties. This was done, by that court in the order reversing the decree of the circuit court for Dane county, in this case, because the proper parties were not before the court. The brief of the counsel for the appellants, states that causes can only be *revived* by bill, and refers to the 51st rule of the circuit court in equity, I do not understand that this is a proper case for a bill of revivor, as the suit had not abated by the death of any of the defendants.

Purinton, who is represented by the demurrants, was not a party to the suit at the time of his death, and his representatives can be brought before the court in the same manner that he could have been, if he were living. It follows from the view I have taken of this demurrer, that the order of the circuit court overruling it must be affirmed.