LOUIS A. LANDAU, Respondent, *v.* HERTZ DRIVURSELF STATIONS, INC., Defendant, Impleaded with DAVID J. KANE, Appellant.

First Department, December 2, 1932.

*Henry J. Smith* of counsel [*Joseph L. Zelaskow* with him on the brief], for the appellant.

*Alexander Rosenbaum* of counsel [*Conrad H. Ratner* with him on the brief; *Rosenbaum & Sanders*, attorneys], for the respondent.

MERRELL, J. Plaintiff brought this action to recover for personal injuries alleged to have been sustained by him by reason of the negligent operation of an automobile by the defendant Kane. Kane had rented this automobile from the defendant Hertz Drivurself Stations, Inc., and said corporation is joined as a party defendant herein.

The business of the corporation was the renting of automobiles for use on the public highway. The defendants, answering, set up a general release to the defendant Hertz Drivurself Stations, Inc., hereinafter referred to as Hertz, executed by the plaintiff upon payment to him by said Hertz of the sum of fifty dollars. The defendant Hertz also set up by way of defense that it had complied with the requirements of section 59 of the Vehicle and Traffic Law by procuring the required insurance, and was, therefore, not liable under that section. Concededly there was no common-law liability on the part of the defendant Hertz, the only liability of said corporation being based upon the provisions of section 59 of the Vehicle and Traffic Law, which liability it had avoided by the procuring of the required insurance pursuant to said section. At the trial the general release which had been delivered by plaintiff to the defendant Hertz the day following the accident was offered and received in evidence, as to the subject-matter of the settlement pursuant to which such release was delivered and as to the knowledge of the parties concerning the matter embraced therein and the injuries sustained by plaintiff. At the close of the whole case the court dismissed the complaint as to the defendant Hertz upon the ground that having complied with the requirements of section 59 of the Vehicle and Traffic Law said defendant was not subject to the liability imposed by said section. From such dismissal there has been no appeal on the part of the plaintiff. The testimony of the plaintiff and his witnesses concerning the release was uncontradicted, and the court charged the jury that the release did not constitute a bar to plaintiff's cause of action against the defendant Kane. The contention of plaintiff was not based upon the claim that the release in question did not bar plaintiff's right to recovery against the defendant Kane upon the ground that it was delivered to the defendant Hertz, but the plaintiff did contend and now contends that the release did not bar plaintiff's right to recovery against either defendant because it was delivered as the result of a mutual mistake of an existing fact. Plaintiff contends that had the release been delivered to Kane as well as to the corporate defendant, the result would have been the same.

Briefly, the facts are as follows: The defendant Hertz rented to the defendant Kane an automobile. At the time of the accident

which befell plaintiff, Kane was in entire charge of the operation and control of said car. The accident occurred about quarter to seven o'clock on the evening of October 7, 1929, at the easterly side of Broadway near Eighty-first street in the city of New York. Plaintiff was crossing Broadway on the northerly crosswalk of Eightieth street at a distance four feet northerly of the curb. As he approached the easterly sidewalk of Broadway there was a line of cars parked facing north. The rented automobile driven by the defendant Kane was the last of these parked cars and as the plaintiff was crossing the street the defendant Kane backed this car into the plaintiff, struck him and threw him down upon the pavement when he was about three feet from the easterly curb. No signal whatever was given to warn plaintiff that the car was backing up. The evidence of the negligence on the part of the defendant Kane was ample, and it appeared that plaintiff was not guilty of contributory negligence. Kane testified that he alighted from his car and saw that he had hit plaintiff, who was lying on the pavement back of the car, and that he picked plaintiff up and inquired whether he was hurt and wanted to take him to a hospital, but that plaintiff assured him that he was merely nervous and preferred to go home; that thereupon Kane took plaintiff to a room in the hotel where plaintiff lived and requested that a doctor be sent for. Shortly thereafter a doctor came and made an examination and prescribed to relieve the pain from which plaintiff was suffering. At the trial this doctor testified that he found plaintiff moving about; that he had him sit down, stand up and lie down, and that he told plaintiff that he had a few bruises in the lower part of the body and that if he rested properly for a time he would be all right and in a few days would be able to go back to his business; that he prescribed heat applications as a remedy for the bruises which plaintiff had sustained. Defendant Kane further testified at the trial that immediately after he left plaintiff he sent a report to the Hertz corporation and also to the Motor Vehicle Bureau of the accident which had occurred stating therein that the extent of the plaintiff's injuries were bruises which he had observed when the plaintiff's trousers were removed. The day following the accident an investigator for Hertz called upon plaintiff, stating his employment as investigator, and that he was also connected with the Fifth Avenue Coach Company, and that he had with him the papers giving a history of the case, and asked plaintiff how he felt, and that plaintiff responded that he felt pretty good. Plaintiff told the investigator about the abrasions and bruises that he had received, and that the doctor had assured him that in a day or so he would be able to go back to work, and that, excepting that his trousers had been torn and he was feeling a little bit sore,

he was all right. Plaintiff testified that his suit of clothes cost fifty dollars, and the only injury thereto being a tear in the trousers, the investigator asked plaintiff whether fifty dollars would be all right as a settlement of the claim. After discussing the matter with his son, plaintiff agreed to take fifty dollars in settlement, and then signed a receipt for that amount and a general release which was on the printed form of the defendant Hertz. At that time plaintiff was ignorant of the fact that instead of his injuries being merely superficial abrasions and bruises, he had sustained multiple fractures of the pelvis. He testified that he would not have signed the papers had he known his actual physical condition. Plaintiff ascertained that his pelvis had been fractured eight days later, when an X-ray disclosed multiple fractures of his pelvis. Plaintiff's testimony was uncontradicted notwithstanding the fact that the investigator was in court at the time of the trial and was not sworn. Immediately following the accident plaintiff did not feel so well. It was with difficulty that he was able to get out of bed. His leg was stiff and sore and he continued to grow worse. He was X-rayed on October 16, 1929. The X-ray disclosed four distinct fractures of the plaintiff's pelvis, one of the superior bone, and another of the inferior bone on either side, one situated about three inches from the middle line and the other about an inch from the middle line and that the corresponding areas posteriorly were fractured. There was a displacement and distortion of the pelvic cavity causing pain in locomotion. It was shown that the competent producing cause of these fractures was the accident which befell plaintiff.

The issues were submitted to the jury by the trial court after dismissal of the complaint as to the defendant Hertz, and the jury rendered a verdict in plaintiff's favor for $2,250. There is no contention that this verdict is at all excessive.

The defendant, appellant, Kane relies entirely upon the general release which was given to the defendant Hertz. There can be no question that this release was given and accepted under a mutual mistake of fact, and that at that time neither the adjuster for the defendant corporation nor plaintiff had the slightest intimation of the seriousness of the injuries which plaintiff had sustained. The defendant, appellant, insists that he was a joint tort feasor with the Hertz corporation, and that the general release executed by the plaintiff to the Hertz corporation released its joint tort feasor, the defendant, appellant, Kane. Under the undisputed testimony in the case the defendant Hertz was never liable for the injuries sustained by plaintiff. It was not in any sense a joint tort feasor with the defendant Kane. At common law it was not liable and it was not liable by virtue of the provisions of section 59 of the

Vehicle and Traffic Law, because it had procured the required insurance provided by that section. It is, therefore, difficult to see how any release given to it could in anywise release Kane, who was unconnected with defendant, was not its agent or employee, and between whom there was no common interest. I think the plaintiff was entirely correct in asserting that, had this release been given to Kane himself, under the circumstances, having been given under a mutual mistake of fact, it had no binding effect. It certainly would have had no binding effect as against the defendant Hertz had that defendant been liable for the reason that it was given under a mutual mistake of fact, neither party knowing the true condition at the time it was executed. (*Kirchner* v. *New Home Sewing Machine Co.,* 135 N. Y. 182; *Dominicis* v. *United States Casualty Co.,* 132 App. Div. 553; *Lumley* v. *Wabash R. Co.,* 76 Fed. 66.) In *Kirchner* v. *New Home Sewing Machine Co.* (*supra*) the Court of Appeals wrote (at p. 189): " If the plaintiff can show that by a mutual mistake of the parties, or by what is its equivalent, a mistake on his part and fraud on the part of his adversary, the present cause of action is embraced in the release, contrary to the intent of the parties, or contrary to his intent in case fraud is proven, he is entitled to an instruction to the jury to the effect that the release does not bar his right to recover."

In *Dominicis* v. *United States Casualty Co.* (*supra*) the Appellate Division wrote as follows: " The parties do not disagree materially as to the law applicable to this case, and that is, that in order to entitle the plaintiff to have the release rescinded in equity he must show that it was executed as the result of a mutual mistake as to an existing fact. The defendant insists that the mistake was not one of fact, but of belief or opinion. This question must be judged solely by the allegations of the complaint. These to my mind are ample to show that the release was signed and delivered as the result of a mutual mistake as to an existing fact. It is asserted in the complaint that at the time the release was executed and delivered *conditions existed* in plaintiff's arm which had not then been discovered which would eventually necessitate its amputation; that neither the plaintiff nor the defendant then knew that those conditions existed, as was the fact, and that the settlement was made and the release signed in good faith under the common but mistaken belief that plaintiff would not lose his arm and upon a mutual mistake as to the conditions actually then existing in the arm that would eventually result in its loss.

" These are not in any sense allegations of opinions or beliefs, but of facts, and are sufficient, in our opinion, if proven, in connection with the other facts alleged, to establish a cause of action to rescind the release as founded upon a mutual mistake of fact."

There is no question that plaintiff made a clear case of avoidance of the release by the testimony of his witnesses, namely, Dr. Hyems, who came at the call of the defendant Kane and examined plaintiff in Kane's presence, the plaintiff and his son, who testified as to the conversation and concerning the settlement and the delivery of the release to the adjuster for the Hertz corporation. This testimony was in nowise controverted by the defendant at the trial, and it was thereby conclusively established that the release was of no effect and justified the charge of the court that Kane could not be benefited thereby. At the time the release was executed no one thought that the plaintiff's injuries were other than superficial. It turned out that he was suffering from a very serious fracture of his pelvis resulting in his total incapacity for months and a weakness existing even at the time of the trial, two and a half years later. While it is true that the trial court held that the release of the Hertz corporation did not release the defendant, appellant, and while the court charged the jury that the release was given to Hertz and not to Kane, and that it was not a release to Kane and he could not benefit from that release, such instruction was technically correct when we consider the conclusive proof in avoidance of the release. The reason assigned by the justice presiding at the trial that the release was given to Hertz and not to Kane as the ground of the court's ruling was not technically correct, although the ruling was correct. The ground stated by the court, even though incorrect, was harmless in light of the cases above referred to. It seems to me that the defendant Hertz was never a tort feasor and certainly under the statute it incurred no liability. It owed plaintiff nothing. The defendant Kane was the sole tort feasor. The appellant cites the case of *Casey* v. *Auburn Telephone Co.* (155 App. Div. 66) as authority in his favor that the execution of the general release in question acted to release the defendant, appellant. In that case, which was a decision in the Fourth Department, plaintiff sued the city of Auburn to recover for the same injury which was the subject of the action there under consideration and a release was obtained by the city of Auburn before trial. The trial court in effect charged the jury that if they should find the city of Auburn was not liable in fact for the injury complained of, then the release did not operate to discharge the defendant. This charge was held to be erroneous by the Fourth Appellate Division, but the *Casey* case differs from the case at bar in that there the plaintiff's claim was predicated upon the common-law liability and the release of joint tort feasors. That relation could not be affected by the finding of the jury in the case against the Auburn Telephone Company as to whether

or not the liability existed in fact. The city of Auburn did owe the plaintiff a duty at common law and violation of that duty was a wrong of which the law took cognizance. Nothing of the sort appeared in the present case. There never was any duty owed to plaintiff by Hertz. In *Wilder* v. *Pennsylvania R. R. Co.* (217 App. Div. 661), Mr. Justice MARTIN of this court writing (at p. 663), stated: " From a holding that we have here a release, it does not follow that plaintiff cannot recover should it be established that the Pennsylvania Railroad Company would not have been liable in any event, that the only tort feasor was the other defendant." It seems to me this language is peculiarly pertinent to the situation here presented. In affirming this court in *Wilder* v. *Pennsylvania R. R. Co.* (*supra*), the Court of Appeals (245 N. Y. 36) held that the so-called release was an agreement not to sue, and among other things said: " No liability existed, consequently there was none to be released." In this case there was no liability on the part of the Hertz corporation to plaintiff; consequently there was nothing to be released. At most, Hertz, not being liable and realizing that fact, by the payment of the fifty dollars did nothing more than obtain a covenant on the part of plaintiff not to sue. It seems to me in this case plaintiff clearly established that the release in question was executed under a clear mutual mistake of fact, and was, therefore, not binding upon plaintiff, even as against the party to whom it was given. It certainly had no binding force or effect as between plaintiff and the defendant, appellant.

The judgment appealed from should be affirmed, with costs to plaintiff, respondent, against defendant, appellant.

FINCH, P. J., O'MALLEY, SHERMAN and TOWNLEY, JJ., concur.

Judgment affirmed, with costs.